UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**CRAIG A. SMITH II,**

    **Plaintiff,**

**v.**                                                                                                  Case No: 5:21-cv-551-PRL

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

                              **ORDER**

Plaintiff appeals the administrative decision denying his application for Disability Insurance Benefits (DIB). Upon a review of the record, the memoranda, and the applicable law, the Commissioner's decision is AFFIRMED.

**I.    BACKGROUND**

On December 18, 2019, Plaintiff filed an application for DIB, alleging disability beginning September 30, 2018. (Tr. 53, 187–88). The claim was denied initially, and upon reconsideration. (Tr. 79–82, 95–115). At Plaintiff's request, a hearing was held on March 31, 2021, where both Plaintiff and an impartial vocational expert testified. (Tr. 25–42, 119–23). On May 3, 2021, the Administrative Law Judge (ALJ) issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 7–24). Plaintiff's request for review was denied by the Appeals Council (Tr. 1–3), and Plaintiff initiated this action on November 9, 2021. (Doc. 1). Plaintiff has exhausted his administrative remedies, and the final decision of the Commissioner is ripe for review under 42 U.S.C. § 405(g).

Based on a review of the record, the ALJ found that Plaintiff had the following medically determinable impairments: narcolepsy, obesity, depression, and anxiety. (Tr. 12). The ALJ found that Plaintiff did not have an impairment or combination of impairments that significantly limited Plaintiff's ability to perform basic work-related activities for twelve consecutive months, and therefore Plaintiff did not have a severe impairment or combination of impairments. (Tr. 12–13). Accordingly, the ALJ determined that Plaintiff is not disabled.

## II.   STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 C.F.R. § 404.1520(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate

to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

### III.   DISCUSSION

Plaintiff raises two arguments on appeal: (1) the ALJ failed to properly evaluate the opinions of Felix Mejias-Cartagena, M.D., and Chad Masters, M.D.; and (2) the ALJ failed to properly evaluate Plaintiff's subjective complaints.

#### A.   The ALJ did not err in evaluating the opinions of Dr. Mejias-Cartagena and Dr. Masters.

First, Plaintiff argues the ALJ failed in evaluating the opinions of Dr. Mejias-Cartagena and Dr. Masters, provided as part of Plaintiff's application to the U.S. Department of Veterans Affairs (VA) for disability benefits.

As a preliminary matter, Plaintiff acknowledges that his claim is subject to a new regulatory framework for evaluating medical opinions. For claims filed on or after March 27, 2017, the Social Security Administration has issued new revised regulations regarding the evaluation of medical evidence, including medical source opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (final rules) ("We are revising our rules to ensure that they reflect modern healthcare delivery and are easier to understand and use. We expect that these changes will help us continue to ensure

a high level of accuracy in our determinations and decisions."). In this case, Plaintiff filed his application in December 2019, thus the new rules apply to his claim.

The new regulations add new categories of "acceptable medical sources" who can provide objective medical evidence to establish the existence of a medically determinable impairment. The new categories of "acceptable medical sources" include licensed physician assistants. *See* 20 C.F.R. § 404.1502(a).

The new regulations impact agency policy in several important respects and contain several significant changes to prior medical evidence rules. *See* 81 Fed. Reg. at 62,560. To begin, the revised regulations redefine how evidence is categorized. Under the revised regulations, there are five categories of evidence: (1) objective medical evidence; (2) medical opinions; (3) other medical evidence; (4) evidence from nonmedical sources; and (5) prior administrative medical findings. *See* 20 C.F.R. § 404.1513(a) (2017).

Second, the definition of "medical opinion" has been considerably revised. For claims filed by adults on or after March 27, 2017, the regulations provide:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
>
> Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co- workers, or work pressures in a work setting;
>
> Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

> Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). In contrast, "[o]ther medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* at § 404.1513(a)(3).

Third, for claims filed on or after March 27, 2017, the regulations change how the agency considers medical opinions and prior administrative medical findings. *See* 20 C.F.R. § 404.1520c (2017). Notably, the regulations no longer use the term "treating source," but refer to "your medical source(s)." 20 C.F.R. § 404.1520c (2017). The Commissioner intentionally chose not to retain the "treating source rule" that previously required deference to treating source opinion evidence. *See* 82 Fed. Reg. at 5883. Rather, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). The ALJ will, instead, consider all medical opinions through the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. *Id.* § 404.1520c(c)(1)-(5).

In this case, Dr. Mejias-Cartagena completed a Narcolepsy Disability Benefits Questionnaire on December 13, 2018, after conducting an in-person examination of Plaintiff and reviewing the VA records. (Tr. 414–16, 749–52). Dr. Mejias-Cartagena noted Plaintiff's reports of excessive daytime sleepiness, sleep attacks, cataplexy, sleep paralysis, sleep onset/sleep offset hallucinations, and seizures. (Tr. 415, 750). He noted Plaintiff's cataplectic

(narcoleptic) episodes, stating "patient can be falling asleep, conscious, random thinking, patient won't feel sleepy buth [sic] feels the tiredness coming; he wakes up and feels something is holding him and cannot move at all, his breathing comes erratic and goes into panic." (Tr. 415, 750). Dr. Mejias-Cartagena opined that Plaintiff's narcolepsy impacted his ability to work. (Tr. 416, 752).

On December 6, 2019, Dr. Masters also completed a Narcolepsy Disability Benefits Questionnaire based on a review of Plaintiff's VA records. (Tr. 453–57). Like Dr. Mejias-Cartagena, Dr. Masters noted Plaintiff's reports of excessive daytime sleepiness, sleep attacks, cataplexy, sleep paralysis, sleep onset/sleep offset hallucinations, and seizures. (Tr. 454–55). Dr. Masters re-stated verbatim Dr. Mejias-Cartagena's description of Plaintiff's narcoleptic episodes. (Tr. 455). Additionally, he noted that "[e]xtreme daytime fatigue and lack of concentration along with ability to randomly fall asleep during the day – all of these lead to issues with veteran completing tasks at work[.]" (Tr. 456). Dr. Masters opined that Plaintiff's narcolepsy would impact his ability to work. (Tr. 456).

The ALJ considered both opinions and found them "not persuasive as they [were] not consistent with observable clinical signs of record and other opinion evidence and [were] based on symptoms." (Tr. 16).

As an initial matter, the Court agrees with the Commissioner that Dr. Mejias-Cartagena's and Dr. Masters' conclusory statements do not constitute "medical opinions" as defined by the regulations. Both questionnaires follow a similar format with seven headings: (1) Diagnosis, (2) Medical history, (3) Findings, Signs and Symptoms, (4) Other Pertinent Physical Findings, Complications, Conditions, Signs and/or Symptoms, (5) Diagnostic Testing, (6) Functional Impact, with a Yes or No option for whether the Veteran's narcolepsy

impacts his or her ability to work, and (7) Remarks. (Tr. 414–16, 454–57). Dr. Mejias-Cartagena and Dr. Masters both checked the box indicating that Plaintiff's narcolepsy impacted his ability to work. However, these statements do not constitute medical opinions, as they do not specifically explain how narcolepsy impacted Plaintiff's ability to work and what Plaintiff could still do despite his narcolepsy. Rather, both questionnaires consist of "judgments about the nature and severity of [Plaintiff's] impairments," Plaintiff's "medical history, clinical findings, diagnosis," and prescribed treatment, which the regulations define as "other medical evidence." *See* 20 C.F.R. § 404.1513(a)(3). Thus, the ALJ was not required to consider the questionnaires under the requirements of 20 C.F.R. § 404.1520c, and articulate their persuasiveness. *See Lanier v. Comm'r of Soc. Sec.*, 252 F. App'x 311, 314 (11th Cir. 2007)[1] (finding a doctor's opinion was conclusory where the doctor "neither specifically explained how [the plaintiff's] impairments impacted on her ability to work nor provided objective medical evidence to support his findings"); *Dye v. Comm'r of Soc. Sec.*, No. 5:20-cv-459-NPM, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022) (finding that the ALJ was not required to assess the purported medical opinion for its persuasiveness where "[n]one of the statements . . . assess[ed] the extent to which [the plaintiff] [could] perform any particular function in a work setting, and so they [did] not constitute 'medical opinions' for purposes of the applicable regulatory regime") (citing 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2)); *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (stating "the mere existence of these impairments does not reveal the extent to which they limit [the plaintiff's] ability to work or undermine the ALJ's determination in that regard").

---

[1] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

Nonetheless, the ALJ did in fact consider both questionnaires and assessed them based on the supportability and consistency factors. "Supportability," refers to how much a medical opinion is supported by objective medical evidence and explanations provided by the medical source giving the opinion. *See* 20 C.F.R. § 404.1520c(c)(1). "Consistency" is a measure of how consistent the medical opinion is with evidence from other sources (medical and nonmedical). *See* 20 C.F.R. § 404.1520c(c)(2).

Here, while the ALJ did not expressly use the term "supportability," it is clear the ALJ considered whether the opinions were supported by objective medical evidence and explanations provided by Dr. Mejias-Cartagena and Dr. Masters. The ALJ found both opinions unsupported as they relied heavily on Plaintiff's subjective complaints. (Tr. 16, 414–16, 453–57). Thus, the ALJ adequately articulated his consideration of the supportability prong for these opinions. *See Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007) (stating that a treating physician's opinion may be discounted where "the opinion appears to be based primarily on the claimant's subjective complaints of pain") (citation omitted); *Hutchison v. Kijakazi*, No. 3:21-cv-211-DCP, 2022 WL 4388285, at *6 (E.D. Tenn. Sept. 22, 2022) (stating, under the new regulations, that "[t]he fact that a medical source's opinion is based primarily on a claimant's subjective complaints and reported symptoms is an adequate basis for discounting the supportability of the opinion").

Plaintiff points to a polysomnogram study completed in 2015, as objective evidence supporting Dr. Mejias-Cartagena's and Dr. Masters' opinions. (Doc. 17, p. 12). The ALJ considered the study in her decision, noting that while it indicated snoring, "claimant's examination was otherwise unremarkable." (Tr. 14). Moreover, the ALJ's decision is not subject to reversal where substantial evidence supports the conclusion she reached. *See*

*Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

The ALJ also considered the consistency factor, finding Dr. Mejias-Cartagena's and Dr. Masters' opinions inconsistent with the record. (Tr. 16). The ALJ noted that on May 28, 2019, during a sleep medicine examination with Sherwin Mina, M.D., Plaintiff reported feeling that he was managing with 200 mg of Modafinil twice per day as needed. (Tr. 16, 1122). On a subsequent visit, on August 28, 2019, Dr. Mina reported that the narcolepsy was stable on Modafinil. (Tr. 16, 1119). The ALJ also noted that a June 27, 2020 consultative examination conducted by Benyam Yoseph, M.D., was largely unremarkable. (Tr. 16, 818–24). Plaintiff was found to be "alert and oriented, and denied any difficulty sitting, standing, walking, lifting, pushing, pulling, caring, reaching, bending, grasping, cooking/meal preparation, performing activities of daily living, housekeeping and laundry, shopping and banking, and driving or obtaining transportation. He was cooperative during the examination and presented with good effort during the examination." (Tr. 16). Additionally, the ALJ noted that "Dr. Yoseph's examination did not indicate any evidence of narcolepsy or seizures . . . but revealed unremarkable clinical signs." (Tr. 16).

As with the supportability factor, Plaintiff argues the evidence supports a different conclusion. Plaintiff argues that "the ALJ overlooked the fact that although [Plaintiff] reported he felt Modafinil was helpful at his August 28, 2019 appointment with Dr. Mina, he further reported experiencing difficulty with insomnia and staying asleep." (Doc. 17, p. 12). While Dr. Mina indeed noted Plaintiff's insomnia was not well controlled, he separately

indicated Plaintiff's narcolepsy was stable on Modafinil. (Tr. 727). Moreover, "[w]hen the record supports multiple readings and the ALJ's chosen reading is a permissible one, the Court must affirm . . . even if the ALJ's chosen reading is preponderated against by a contrary reading." *See Bentley v. Comm'r of Soc. Sec.*, No. 6:21-cv-226-DCI, 2022 WL 1553425, at *3 n.7 (M.D. Fla. May 17, 2022) (citing *Crawford*, 363 F.3d at 1158–59).

Plaintiff, in essence, is really asking the Court to reweigh the evidence, which is not within the province of this Court. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.") (quotation omitted). Accordingly, Plaintiff has failed to show that the ALJ erred in evaluating the opinions of Dr. Mejias-Cartagena and Dr. Masters.

**B.    The ALJ did not err in evaluating Plaintiff's subjective complaints.**

Second, Plaintiff argues that "[t]he ALJ's reasons for rejecting [his] testimony regarding his narcolepsy and resulting limitations are not based on the correct legal standards or supported by substantial evidence." (Doc. 17, p. 15).

When a claimant alleges that he or she has disabling subjective symptoms, the ALJ must determine whether the claimant has a condition that could reasonably be expected to cause the symptoms. 20 C.F.R. § 404.1529(c)(1). If the ALJ determines the claimant has such a condition, the ALJ will evaluate the alleged symptoms' intensity and persistence and how they limit the claimant's ability to work. *Id*. The ALJ will consider the claimant's testimony regarding his or her symptoms, including any inconsistencies between the testimony and the other evidence. 20 C.F.R. § 404.1529(c)(3)-(4). An ALJ may reject a claimant's testimony of disabling symptoms as not credible if he provides "explicit and adequate reasons." *Dyer v.*

*Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1561–62.

In this case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms." (Tr. 17). However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not consistent with the medical record for the reasons explained in this decision." (Tr. 17). The ALJ further noted that Plaintiff's statements were "inconsistent because the most recent examination by Dr. Mina in August 2019 indicated his narcolepsy [was] stable on Modafinil" and that Plaintiff's "physician at the VA noted this impairment was well controlled." (Tr. 17).

Plaintiff argues that the ALJ erroneously discounted his testimony solely based on Dr. Mina's August 2019 notes indicating his narcolepsy was stable on Modafinil, and on the observations of Vanthanh Ly, M.D., from February 25, 2019, that his narcolepsy was well controlled, which, as Plaintiff argues, was an incorrect statement. Contrary to Plaintiff's contention, in evaluating Plaintiff's subjective complaints the ALJ did not solely rely on this evidence, and instead considered the entire record, including medical opinions and Plaintiff's activities of daily living, as evinced by the ALJ's statement "for the reasons explained in this decision." It was not necessary for the ALJ to repeat her prior analysis of this evidence. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses"). The ALJ further explained that Plaintiff's statements were inconsistent with Dr. Mina's and Ly's findings, and in subsequent paragraphs, to Dr.

Yoseph's consultative examination revealing normal mental status findings, and Plaintiff's self-reported activities of daily living. (Tr. 17–18, 818–24).

Turning to Plaintiff's first contention, the ALJ did not err by relying on Dr. Mina's finding that Plaintiff's narcolepsy was stable on Modafinil in evaluating Plaintiff's subjective complaints. (Tr. 17). Citing to cases from other jurisdictions, Plaintiff argues that the fact that his condition was stable was immaterial as it did not preclude a finding of disability. (Doc. 17, p. 15). However, the ALJ properly considered the effectiveness of Plaintiff's treatment, as contemplated by the regulations, noting that "once his dosage of Modafinil was increased to 200 mg twice per day," his narcolepsy improved. (Tr. 18); *see* 20 C.F.R. § 404.1529(c)(3)(iv) (listing "[t]he type, dosage, effectiveness, and side effects" of a claimant's medication taken to alleviate his symptoms as a relevant consideration in evaluating the intensity and persistence of symptoms); *see also Boisseau v. Comm'r of Soc. Sec.*, No. 6:20-cv-1436-DCI, 2021 WL 9583302, at *6 (M.D. Fla. Dec. 23, 2021) (finding the ALJ properly considered, among other things, that the plaintiff's neuropathic pain was stable in evaluating her subjective complaints); *Brown v. Comm'r of Soc. Sec.*, 677 F. App'x 529, 531 (11th Cir. 2017) (finding the ALJ properly considered, among other things, "treatment records, which indicated stable conditions when [the plaintiff] complied with recommended medical care"); *Carter v. Comm'r of Soc. Sec.*, 411 F. App'x 295, 297 (11th Cir. 2011) (stating "[w]e have affirmed an ALJ's decision that a claimant's testimony as to the alleged levels of pain and symptoms he experienced was not credible where the allegations were inconsistent with activities of daily living, limited use of pain medication, and effectiveness of treatment") (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002)); *Alcott v. Comm'r of Soc. Sec.*, No. 6:12-cv-453-Orl-DAB, 2013 WL 646173, at *9 (M.D. Fla. Feb. 21, 2013) (finding that the claimant's

stability on medications was an appropriate consideration when assessing the claimant's subjective complaints).

Turning to Plaintiff's second contention, Plaintiff correctly points out that on February 25, 2019, Dr. Ly indicated Plaintiff's narcolepsy was not well controlled "due to psychsocial [sic] stress factors which interfere to his wake-sleep pattern[,]" which is contrary to the ALJ's statement that Plaintiff's "physician at the VA noted this impairment was well controlled." (Tr. 17, 1134). Nonetheless, the ALJ acknowledged Dr. Ly's February 2019 impression concerning Plaintiff's narcolepsy elsewhere in her opinion, noting that "[d]uring a sleep medicine examination on February 25, 2019, [Plaintiff] complained of a varied sleep pattern, partially due to his young baby's sleep schedule. . . . [Plaintiff's] narcolepsy was noted as being not well controlled due to psychosocial stress. [Plaintiff's] dosage of Modafinil was increased and he was recommended to continue psychotherapy." (Tr. 14). Thus, the ALJ was aware of Dr. Ly's February 25, 2019 observation, even though she misstated it later in her analysis. As the ALJ noted, Dr. Ly further indicated that "[a]fter extensive discussion, [patient was] willing to take modafanil 100-200 mg bid, in addition to psychotherapy to alleviate personal stress factors, in addition to lifestyle modifications." (Tr. 1134). Subsequent treatment notes support the ALJ's finding that Plaintiff's narcolepsy was indeed well controlled with medication.

On May 15, 2019, treatment notes show that Plaintiff's dosage of Modafinil was increased to 200 mg twice a day. (Tr. 1126–27). On May 28, 2019, Dr. Mina noted that Plaintiff's narcolepsy was "stable at this time" and that Plaintiff reported "managing with modafinil 200 mg bid prn and marijuana at night." (Tr. 1122, 1125). On August 28, 2018, Dr. Mina similarly noted that Plaintiff's narcolepsy was "stable on modafinil." (Tr. 1119).

Accordingly, regarding Plaintiff's narcolepsy, the ALJ properly found that "once [Plaintiff's] dosage of Modafinil was increased to 200 mg twice per day, this condition improved. An alternative medication was proposed, but [Plaintiff] was unwilling to cease marijuana usage. This suggests the intensity of his symptoms are consistent with non severe impairments." (Tr. 18).

In addition to Plaintiff's treatment regimen, the ALJ considered the opinions of State agency medical consultants, who reviewed the medical evidence of record and found Plaintiff's "impairments or combination of impairments [did] not significantly limit his physical or mental ability to do basic work activities." (Tr. 15, 59–62, 70–75). The ALJ found these opinions persuasive "as they [were] consistent with the medical record that reveal[ed] that the narcolepsy was stable on Modafinil, . . . the record's observable clinical signs that [Plaintiff's] impairments were controlled with medication and the normal or unremarkable observable clinical signs reported by Dr. Yoseph on examination." (Tr. 15). The ALJ also noted Dr. Yoseph's "consultative examination indicated normal mental status findings" and that Plaintiff's "physical examination was unremarkable." (Tr. 15, 17–18, 818–24).

Finally, the ALJ also properly considered Plaintiff's self-reported activities of daily living and found them inconsistent with his testimony. The ALJ noted that during Dr. Yoseph's consultative examination, "while [Plaintiff] stated he is always tired and has problems with concentration, he also denied any difficulty sitting, standing, walking, lifting, pushing, pulling, caring, reaching, bending, grasping, cooking/meal preparation, performing activities of daily living, housekeeping and laundry, shopping and banking, and driving/obtaining transportation." (Tr. 18; *see also* Tr. 15, 212–15, 258–60, 280–82, 818–19); *see* 20 C.F.R. § 404.1529(c)(3)(i) (listing daily activities as a relevant consideration in

evaluating intensity and persistence of symptoms and determining the extent to which symptoms limit capacity for work).

Accordingly, the ALJ provided good cause reasons, supported by substantial evidence, to support her finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not consistent with the medical record." (Tr. 17). The ALJ properly considered Plaintiff's treatment history together with the other record evidence. Even if this Court were to disagree with the ALJ's resolution of the factual issues, and would resolve them differently, the ALJ's decision nevertheless must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. *See Winschel*, 631 F.3d at 1178; *Barnes*, 932 F.2d at 1358 ("The court need not determine whether it would have reached a different result based upon the record.").

## IV.   CONCLUSION

For the reasons stated above, the ALJ'S decision is AFFIRMED under sentence four of 42 U.S.C. § 405(g). The **Clerk is directed** to enter final judgment for the **Commissioner** and **close the file**.

**DONE and ORDERED** in Ocala, Florida on November 18, 2022.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties